899 So.2d 928 (2004)
Ex parte DAIMLERCHRYSLER CORPORATION.
(In re Ruth Jackson Hannon, as administratrix of the estate of Richard E. Hannon III, deceased; and Mattie Joyce Allen Gulley, as administratrix of the estate of Marvin Sanchez Allen, deceased v. Roy King, as administrator ad litem of the estate of Roderick Antonio Kelley, deceased; et al.)
Ex parte DaimlerChrysler Corporation.
(In re Bradford L. Griffin v. Roy King, as personal representative of the estate of Roderick Kelley, deceased; et al.)
Ex parte DaimlerChrysler Corporation.
(In re Jesse B. Kelley v. Roy King, as personal representative of the estate of Roderick Kelley, deceased; et al.)
Ex parte Rental Car Finance Corporation; Dollar Rent-A-Car; and PRP Enterprises/PRT Enterprises, Inc., d/b/a Dollar Rent-A-Car.
(In re Ruth Jackson Hannon, as administratrix of the estate of Richard E. Hannon III, deceased; and Mattie Joyce Allen Gulley, as administratrix of the estate of Marvin Sanchez Allen, deceased v. Roy King, as administrator ad litem of the estate of Roderick Antonio Kelley, deceased; et al.)
Ex parte Rental Car Finance Corporation; Dollar Rent-A-Car; and PRP Enterprises/PRT Enterprises, Inc., d/b/a Dollar Rent-A-Car.
(In re Bradford L. Griffin v. Roy King, as personal representative of the estate of Roderick Kelley, deceased; et al.)
Ex parte Rental Car Finance Corporation; Dollar Rent-A-Car; and PRP Enterprises/PRT Enterprises, Inc., d/b/a Dollar Rent-A-Car.
(In re Jesse B. Kelley v. Roy King, as personal representative of the estate of Roderick Kelley, deceased; et al.)
Ex parte DaimlerChrysler Corporation.
(In re Shawanna Nelson, as administrator of the estate of Raymon Spates, deceased v. Roy F. King, Jr., as administrator of the estate of Roderick Kelley, deceased; et al.)
1030573, 1030574, 1030575, 1030576, 1030577, 1030579, and 1030589.
Supreme Court of Alabama.
September 17, 2004.[*]
*929 Michael L. Bell, J. Bradley Powell, Enrique J. Gimenez, and Ivan B. Cooper of Lightfoot, Franklin & White, LLC, Birmingham, for petitioner DaimlerChrysler Corporation.
J. Mark Hart and Joseph L. Cowan II of Haskell Slaughter Young & Rediker, L.L.C., Birmingham, for petitioners Rental Car Finance Corporation; Dollar Rent-A-Car; and PRP Enterprises/PRT Enterprises, Inc., d/b/a Dollar Rent-A-Car.
Lanny S. Vines and Michael Allsup of Emond Vines Gorham & Waldrep, P.C., Birmingham, for respondents Ruth Jackson Hannon, Mattie Joyce Gulley, and Dan C. King III in case nos. 1030573 and 1030576.
Dan A. Goldberg and D. Dirk Thomas of Goldberg & Associates, P.C., Birmingham, for respondents Bradford L. Griffin, Jesse B. Kelley, and Dan C. King III in case nos. 1030574, 1030575, 1030577, and 1030579.
William P. Traylor III of Yearout & Traylor, P.C., Birmingham, for respondents Shawanna Nelson and Dan C. King III, and Helen Shores in case no. 1030589.
LYONS, Justice.
DaimlerChrysler Corporation, Rental Car Finance Corporation, Dollar Rent-A-Car, and PRP Enterprises/PRT Enterprises, Inc., d/b/a Dollar Rent-A-Car, defendants in four actions arising out of a single motor-vehicle accident, have filed seven petitions for a writ of mandamus challenging *930 the trial court's orders concerning venue for the four actions. This Court consolidated these cases for purposes of writing one opinion. Some, but not all, of the petitions assert that venue is improper in the Bessemer Division of the Jefferson Circuit Court. Some, but not all, of the petitions assert that the doctrine of forum non conveniens requires the dismissal of the actions filed in the Bessemer Division of the Jefferson Circuit Court. In cases no. 1030573, 1030574, and 1030575, we grant the petitions in part, deny them in part, and issue the writs. In cases no. 1030576, 1030577, and 1030579, we grant the petitions and issue the writs. In case no. 1030589, we deny the petition.

I. Factual Background
Joe Parker, an uncle of Roderick Kelley,[1] rented a 2001 Plymouth Voyager minivan on March 27, 2001, from Dollar Rent-A-Car or PRP Enterprises/PRT Enterprises, Inc., d/b/a Dollar Rent-A-Car. Rental Car Finance Corporation was the owner of the minivan. Shortly after midnight on March 29, 2001, six personsRoderick Kelley, Jesse Kelley, Richard Hannon, Marvin Allen, Bradford Griffin, and Raymon Spatesleft the "Kelley residence" in Bessemer traveling to Daytona Beach, Florida, in the minivan. At about 6:38 a.m., Roderick Kelley, who was driving the minivan at that time, lost control of the minivan while driving in rainy conditions on Interstate Highway 75 South in Turner County, Georgia. The minivan crossed the median, entered the northbound lanes of I-75, and was struck broadside by a tractor-trailer rig being driven by Edwin Marion Coggins and owned by Coggins Farms and Produce of Lake Park, Georgia.
Jesse Kelley and Griffin were severely injured. Roderick Kelley, Hannon, Allen, and Spates were killed. Coggins, the driver of the tractor-trailer rig, was not injured. This accident gave rise to four different actions.

II. The Mandamus Petitions

A. Cases No. 1030575 and 1030579 (Personal-Injury Action Filed by Jesse Kelley (CV-03-401))
Jesse Kelley, an injured passenger, filed an action in the Bessemer Division of the Jefferson Circuit Court against Roy King,[2] the administrator of the estate of the driver, Roderick Kelley; and Joe Parker, the individual who had rented the minivan. That action was docketed as CV-03-401 ("the Kelley action"). By amendment, Jesse Kelley added, in substitution for fictitiously named defendants, Rental Car Finance Corporation, Dollar Rent-A-Car, and PRP Enterprises/PRT Enterprises, Inc., d/b/a Dollar Rent-A-Car (hereinafter collectively referred to as "Dollar"); and DaimlerChrysler Corporation, DaimlerChrysler Motors Corporation, DaimlerChrysler Motor Company, L.L.C., and Chrysler Motor Corporation (hereinafter collectively referred to as "DCC").[3]
Jesse Kelley alleged negligence and wantonness, negligent entrustment, negligent and wanton failure to warn, breach of *931 the implied warranty of fitness for a particular purpose, and violations of Alabama's and Georgia's Extended Manufacturer's Liability Doctrines. The complaint alleges that the minivan and its component parts were defective and unreasonably dangerous in that they were designed, manufactured, distributed, and sold by DCC in a defective and unreasonably dangerous condition, and in that the minivan was not crashworthy and was not reasonably suited for its known and foreseeable environment and use because its "Gen-3" seatbelt and buckle system was defective, because it lacked side-impact air bags, and/or because of its unreasonably dangerous instability and/or roof defects.
Dollar filed a motion to dismiss or for summary judgment, contending 1) that the claims against it were time-barred because the amendment did not relate back to the filing of the original complaint; 2) that the trial court lacked jurisdiction over Dollar; and 3) that venue was improper in the Bessemer Division of the Jefferson Circuit Court. The trial court denied the motion. In its mandamus petition in case no. 1030579, Dollar argues that the trial court improperly refused to transfer the Kelley action from the Bessemer Division to the Birmingham Division and asks this Court to direct the trial court to transfer the case to the Birmingham Division.
DCC also moved in the Kelley action to transfer the action from the Bessemer Division to the Birmingham Division because, it argued, the action did not arise in Bessemer. In addition, DCC moved to dismiss the action, arguing that because the action arose in Georgia, § 6-5-430, Ala. Code 1975, the forum non conveniens statute mandated that the trial court decline jurisdiction and dismiss the action so that it could be refiled in Georgia.[4] The trial court denied DCC's motions. In its mandamus petition in case no. 1030575, DCC asks this Court to direct the trial court to dismiss the Kelley action pursuant to the forum non conveniens statute (§ 6-5-430) so the action can be refiled in Georgia. Alternatively, DCC asks this Court to direct the trial court to transfer the Kelley action to the Birmingham Division.

B. Cases No. 1030574 and 1030577 (Personal-Injury Action Filed by Bradford Griffin (CV-03-402))
Bradford Griffin, an injured passenger, filed an action in the Bessemer Division of the Jefferson Circuit Court, naming the same defendants as those named in the Kelley action and asserting the same claims; that action was docketed as CV-03-402 ("the Griffin action"). Dollar and DCC filed the same motions regarding venue that they filed in the Kelley action; the trial court denied those motions. In their mandamus petitions in cases no. 1030577 and 1030574, Dollar and DCC, respectively, seek the same relief they seek in cases no. 1030579 and 1030575, respectively, dealing with the Kelley action.

C. Cases No. 1030573 and 1030576 (Action Brought by Representatives of Decedents Richard Hannon and Marvin Allen (CV-03-411))
The personal representatives of Richard Hannon and Marvin Allen filed an action in the Bessemer Division of the Jefferson Circuit Court, naming the same defendants as those named in the Kelley action and asserting the same claims; that action was docketed as CV-03-411 ("the Hannon/Allen action"). DCC and Dollar filed the same motions regarding venue that they filed in the above-described actions; the trial court denied those motions. In *932 their mandamus petitions in cases no. 1030576 and 1030573, Dollar and DCC, respectively, seek the same relief that they seek in cases no. 1030579 and 1030575, respectively, dealing with the Kelley action.

D. Case No. 1030589 (Action By Representative of Decedent Raymon Spates (CV-03-5907))
The personal representative of Raymon Spates filed an action in the Bessemer Division of the Jefferson Circuit Court, naming the same defendants as those named in the Kelley action and asserting the same claims; that action was docketed as CV-03-405 ("the Spates action"). Dollar moved to transfer the action to the Birmingham Division because, it argued, the action did not arise in Bessemer; the trial court granted the motion. After the Spates action was transferred to the Birmingham Division and docketed as case no. CV-03-5907, DCC filed a motion to dismiss pursuant to § 6-5-430; the trial court denied the motion. In its mandamus petition in case no. 1030589, DCC asks this Court to direct the trial court to dismiss the Spates action pursuant to § 6-5-430 so that it can be refiled in Georgia.

III. Forum Non Conveniens (Cases No. 1030573, 1030574, 1030575, and 1030589)

A. Overview
DCC and Dollar, respectively, assert in cases no. 1030573, 1030574, 1030575, 1030576, 1030577, and 1030579 that the trial court erred in refusing to transfer the action from the Bessemer Division to the Birmingham Division of the Jefferson Circuit Court. DCC alone in cases no. 1030573, 1030574, 1030575, and 1030589 contends that the actions underlying those petitions are due to be dismissed so that they can be refiled in Georgia for reasons of forum non conveniens pursuant to § 6-5-430. Disposition on this ground would render it unnecessary to consider the issue of improper venue; hence, we address it at the outset.[5]

B. Standard of Review
We addressed the standard of review in the context of a motion made pursuant to § 6-5-430 in Ex parte Kia Motors America, Inc., 881 So.2d 396 (Ala.2003). We stated:
"Our standard of review in mandamus cases is well settled:
"`Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought, (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so, (3) the lack of another adequate remedy, and (4) properly invoked jurisdiction of the court. Ex parte Integon Corp., 672 So.2d 497, 499 (Ala.1995). "A petition for the *933 writ of mandamus is a proper method for presenting a venue challenge based on the doctrine of forum non conveniens." Id. (citations omitted). We apply the abuse-of-discretion standard when considering a mandamus petition challenging a venue ruling, and we will not issue the writ unless the trial court exercised its discretion in an arbitrary and capricious manner. Id.'
"Ex parte Brookwood Health Servs., Inc., 781 So.2d 954, 956-57 (Ala.2000). Furthermore, our review is limited to those facts that were before the trial court. Ex parte Jim Burke Auto., Inc., 776 So.2d 118, 120 (Ala.2000)."
881 So.2d at 399.

C. Analysis
DCC contends that the actions in cases no. 1030573, 1030574, 1030575, and 1030589 should be dismissed so that those actions can be refiled in Turner County, Georgia. DCC relies upon § 6-5-430, which provides:
"Whenever, either by common law or the statutes of another state or of the United States, a claim, either upon contract or in tort has arisen outside this state against any person or corporation, such claim may be enforceable in the courts of this state in any county in which jurisdiction of the defendant can be legally obtained in the same manner in which jurisdiction could have been obtained if the claim had arisen in this state; provided, however, the courts of this state shall apply the doctrine of forum non conveniens in determining whether to accept or decline to take jurisdiction of an action based upon such claim originating outside this state; and provided further that, if upon motion of any defendant it is shown that there exists a more appropriate forum outside this state, taking into account the location where the acts giving rise to the action occurred, the convenience of the parties and witnesses, and the interests of justice, the court must dismiss the action without prejudice. Such dismissal may be conditioned upon the defendant or defendants filing with the court a consent (i) to submit to jurisdiction in the identified forum, or (ii) to waive any defense based upon a statute of limitations if an action on the same cause of action is commenced in the identified forum within 60 days of the dismissal."
(Emphasis added.)
In Kia Motors, we addressed the effect of § 6-5-430:
"The doctrine of forum non conveniens requires a court to determine whether to accept or to decline jurisdiction of claims arising outside the state. Ex parte Integon Corp., 672 So.2d 497 (Ala.1995). `Initially, the party seeking dismissal must show that the claim[s] arose outside Alabama. Next, that party must show that an alternative forum exists.' 672 So.2d at 499; Ex parte Preston Hood Chevrolet, Inc., 638 So.2d 842, 845 (Ala.1994); Ex parte Employers Ins. of Wausau, 590 So.2d 888, 893 (Ala. 1991); Jerome A. Hoffman & Sandra C. Guin, Alabama Civil Procedure § 2.148 (2d ed. 2000) (`A party seeking dismissal under § 6-5-430 must establish that the claim to be dismissed arose elsewhere than in Alabama.' (footnote omitted)).
"Thus, the trial court is compelled to dismiss an action without prejudice if, upon a defendant's motion, it is shown that there exists a more appropriate forum outside the state, taking into account the location where the acts giving rise to the action occurred, the convenience of the parties and witnesses, and the interest of justice. Ex parte Prudential *934 Ins. Co. of America, 721 So.2d 1135, 1138 (Ala.1998). In addition, in determining whether a dismissal of the action on the ground of forum non conveniens should be granted, the trial court should consider `the relative ease of access to sources of proof, the location of the evidence, the availability of compulsory process for the attendance of unwilling witnesses, the cost of obtaining the attendance of willing witnesses, the possibility of a view of the premises, if a view would be appropriate to the action, and any other matter in order to assess the degree of actual difficulty and hardship that would result to the defendant in litigating the case in the forum chosen by the plaintiff.' Ex parte Ben-Acadia, Ltd., 566 So.2d 486, 488 (Ala.1990). If, after weighing all of the factors, the judge finds that the balance is `strongly in favor of the defendant,' he or she may decline to exercise jurisdiction and dismiss the complaint. Id."
881 So.2d at 399-400.
DCC points to the accrual of the plaintiffs' tort claims in Georgia. The plaintiffs acknowledge that the substantive law of Georgia will govern these proceedings. Consequently, DCC has shouldered its burden of establishing that the claims arose outside the state of Alabama.
In its effort to establish that aspect of a showing that the forum is inconvenient for, and will affect the availability of, witnesses, DCC attached the affidavits of five individuals. Charles K. Gordon, an employee of the Georgia Highway Patrol, testified by affidavit that he was present at the scene of the accident, that he assisted with injured persons at the scene, and that he drafted an accident report relating to the accident. He then stated that he had "personal and professional obligations that may make it impossible for [him] to guarantee [his] outright availability at any time that the parties may need [him] for deposition or trial." (Emphasis added.) Coggins, the driver of the tractor-trailer rig involved in the accident, testified by affidavit that he was a witness to the accident and that he "can testify to the events leading up to, and immediately subsequent to the accident." He then stated that he had "personal and professional obligations that may make it impossible for [him] to guarantee [his] outright availability at any time that the parties may need [him] for deposition or trial." (Emphasis added.) Edgar F. Perry, the coroner for Turner County, Georgia, testified by affidavit that he was present at the scene of the accident and that he photographed the accident scene and generally oversaw the removal and transport of the deceased from the scene. He then stated that he had "personal and professional obligations that may make it impossible for [him] to guarantee [his] outright availability at any time that the parties may need [him] for deposition or trial." (Emphasis added.) Sherrie Collins, apparently an employee of an emergency medical service who was present at the scene, testified by affidavit that she had "personal knowledge surrounding the accident." She then stated that she had "personal and professional obligations that may make it impossible for [her] to guarantee [her] outright availability at any time that the parties may need [her] for deposition or trial." (Emphasis added.) Chris Ward, another employee of an emergency medical service who was present at the scene, also testified by affidavit that he had "personal knowledge surrounding the accident." He then stated that he had "personal and professional obligations that may make it impossible for [him] to guarantee [his] outright availability at any time that the parties may need [him] for deposition or trial." (Emphasis added.) None of the witnesses definitively stated that he or *935 she would not be able to attend a deposition or a trial in Jefferson County.
The plaintiffs respond by stating in their joint brief that this is a products-liability/crashworthiness case involving a classic "battle of experts" and that venue in the Bessemer Division of the Jefferson Circuit Court could not be inconvenient for those expert witnesses. The plaintiffs further contend in their brief:
"There will only be minimal `fact' testimony in the traditional sense bearing on the defendants' liability, and that will come from the survivors of the subject motor vehicle crash (Bradford Griffin and Jesse Kelley) and from the employees and agents of the car rental defendants who are present in Jefferson County, Alabama. Testimony relating to the plaintiffs' damages will come from both experts (none from Turner County, Georgia) and plaintiffs' witnesses who live in Jefferson County (primarily in Bessemer)."
DCC relies heavily on Kia Motors, stating in its petitions, "The relevant facts for purposes of dismissal in Ex parte Kia are almost identical to those in this action." We disagree. Kia Motors sought to have an action that had been brought against it in an Alabama circuit court dismissed pursuant to the doctrine of forum non conveniens. This Court held in Kia Motors that dismissal of the action was appropriate because the cause of action accrued outside Alabama and because Kia Motors planned to call 25 nonparty witnesses, who could not be subpoenaed to testify in Alabama. DCC argues that its situation is identical to the situation in Kia Motors, but there are several factual distinctions between the two cases.
In Kia Motors, both defendants, Kia Motors and Emerald Auto Sales, sought dismissal pursuant to the doctrine of forum non conveniens. In the present case, only DCC has argued for a transfer to Georgia based on forum non conveniens. The other defendants have not sought such a transfer, and they have not joined DCC's motions in the trial court or its petitions to this Court for the writ of mandamus. In Kia Motors, the plaintiffs themselves resided in Florida, the forum state held to be more appropriate. Here, all of the plaintiffs reside in Alabama.
Another distinguishing factor is the quantity and the quality of the evidence shown in support of a transfer. Kia Motors presented 25 affidavits from essential nonparty witnesses who all stated that it would be inconvenient and a hardship for them to be present for a trial in Alabama. Although the opinion in Kia Motors only broadly summarizes the affiants' testimony, the context of their particular testimony is as follows:
1) James Reeves stated that he was the owner of the property on which the accident occurred. He said that he was present immediately after the accident and that he could testify to the dangerousness of the intersection where the accident occurred.
2) Kenneth Ray Kirkland stated that he made observations regarding the location of the vehicles after the accident and the damage to the vehicles. He stated that he could also testify to the condition of the occupants of the vehicles because he was personally involved in extricating the occupants from the vehicles after the accident.
3) Wilburn Alan Hart testified that he made measurements, estimates, and observations regarding the post-accident location and condition of the vehicles involved in the accident.
4) Carlos Randall Blackburn stated that he could testify as to the damage to the vehicles and as to the dangerousness *936 of the intersection where the accident occurred.
5) Byron Austin Bennett stated that he responded to the accident and that he could testify as to the damage to and the condition of the vehicles and the occupants.
6) Chief Robby Brown of the Jackson County Fire Rescue Department stated that he could testify as to the exact positioning of the driver of the Kia vehicle and the final rest and positioning of the rear-seat occupants of that vehicle. Chief Brown also stated that a number of firefighters and emergency response personnel from his department would be required to leave their station if a trial was held in Alabama as opposed to Florida and that the absence of so many personnel would interfere with the duties of the department.
7) Gary Hall stated that he could testify as to his observations of the location and the condition of the vehicles and the occupants involved in the accident.
8) Kevin Arnold and Quenton Hollis stated that they observed the vehicles in their immediate post-accident condition. They also stated that they spoke to many individuals at the scene of the accident as a part of their investigations.
9) Nakeya Roy Lovett stated that he assisted in the medical treatment of an occupant of one of the vehicles.
10) Christopher Welch stated that he observed the burn damage to the vehicle that caught fire in the accident and that he could offer opinion testimony as to the burn patterns.
11) Dennis Scott Hall stated that he arrived upon the scene of the accident just minutes after it occurred.
12) Steven Michael Ostrowski stated that he observed the skid marks from the accident.
13) Bobby Ray Lee stated that he assisted in extinguishing the fire caused by the accident and assisted in the treatment of one of the occupants.
14) The remaining affiants stated that they could testify as to the immediate post-accident condition and locations of the vehicles and the occupants involved in the accident.
The substance of a nonparty witness's testimony is equally as important as the witness's physical location when determining whether the doctrine of forum non conveniens is applicable. See Ex parte Preston Hood Chevrolet, Inc., 638 So.2d 842, 845 (Ala.1994) (stating that "a defendant cannot assert the inconvenience of its witnesses without making a detailed statement specifying the key witnesses and providing general statements of the subject matter of their testimony"). While the proposed testimony from DCC's five nonparty witnesses is similar in some instances, it is not as factually detailed as the testimony of the 25 witnesses Kia Motors offered indicating the existence of specific information as to the condition of the scene of the accident at a dangerous intersection. Other than the driver of the other vehicle, the DCC witnesses consist of a highway patrolman, the coroner, and two emergency-medical personnel. Those witnesses all arrived at the scene after the wreck. Much of the same information held by the coroner and patrolman should also be available in public records. Further, the plaintiffs do not dispute that Roderick Kelley lost control of the minivan, crossed the median, and was struck by Coggins's tractor-trailer rig, as set out in the Georgia Uniform Motor Vehicle Accident Report. The two emergency-medical personnel refer to nothing more detailed than "personal knowledge surrounding the accident." The only witness to the accident included in DCC's submission is Coggins, the driver *937 of the other vehicle. Thus, there are only three known witnesses to the accident: Coggins and the two surviving plaintiffs.
Moreover, the primary issue in this case is the crashworthiness of the rented minivan. DCC acknowledges that most of the experts live outside the state of Alabama and regularly travel to testify at trials across the country. The crashworthiness of the vehicle was also a primary issue in Kia Motors, because the plaintiffs in the case argued that the fuel system of the car was defective and that the defective fuel system caused the fire that killed the victims. However, Kia Motors argued that several peculiar environmental factors at the scene of the accident also could have caused the fire. The possible existence of those environmental factors heightened the need for crucial fact witnesses familiar with the site in Kia Motors in addition to expert witnesses who would testify to the crashworthiness of the vehicle. Here, DCC has not pointed to any unique circumstances surrounding the scene of the accident that would make those fact witnesses who generally observed the scene of the accident comparable to the witnesses who were familiar with the site in Kia Motors. Also, we do not have several witnesses with material facts concerning a notoriously dangerous intersection as were presented in Kia Motors. As previously noted, it is undisputed that Roderick Kelley simply lost control of the minivan while driving in rainy conditions on I-75.
While the law of Georgia will govern this case, the mere fact that the law of another state controls does not warrant a dismissal. See Preston Hood Chevrolet, 638 So.2d at 845-46.
In summary, none of the parties live or have lived or are located in Turner County, Georgia. The decedents were all residents of Jefferson County at the time of their deaths. The personal-injury victims are residents of Jefferson County. An individual defendant in two of the cases resides in Jefferson County. Rental Car Finance Corporation is registered to do business in Alabama but was not registered to do business in Georgia at the time of the accident. PRP Enterprises/PRT Enterprises, Inc., d/b/a Dollar Rent-A-Car, is registered to do business in Alabama but is not registered to do business in Georgia. Dollar Rent-A-Car is registered to do business in both Alabama and Georgia. As previously noted, no defendant has challenged jurisdiction in Jefferson County. DCC has not shown that the physical presence of its witnesses at trial, assuming that they would not make themselves available in Jefferson County, is of such magnitude as to compel the conclusion that the trial court exceeded its discretion in not finding that "the balance is `strongly in favor of the defendant,'" Kia Motors, 881 So.2d at 400, thus warranting a transfer pursuant to the doctrine of forum non conveniens. The availability of Coggins, a witness to the accident, at a trial in Turner County, Georgia, and his potential unavailability at a trial in Jefferson County because of "personal and professional obligations that may make it impossible... to guarantee [his] outright availability at any time that the parties may need [him] for deposition or trial" falls short of the aforementioned required showing. We therefore deny DCC's petitions for the writ of mandamus to compel the dismissal of these four actions so as to permit refiling of the actions in Turner County, Georgia.

IV. Improper Venue (Cases No. 1030573, 1030574, 1030575, 1030576, 1030577, and 1030579)

A. Overview
Both DCC and Dollar contend that the trial court erred in denying their motions for transfer of venue to the Birmingham *938 Division of the Jefferson Circuit Court. The trial court granted a motion for transfer in the Spates action, which the plaintiffs contend was not contested for strategic reasons. The plaintiffs have not sought review of that order.

B. Standard of Review
In Ex parte Walter Industries, Inc., 879 So.2d 547 (Ala.2003), we addressed the standard of review in the context of the proper venue for an action.
"`The question of proper venue for an action is determined at the commencement of the action.' Ex parte Pratt, 815 So.2d 532, 534 (Ala.2001). `If venue is not proper at the commencement of an action, then, upon motion of the defendant, the action must be transferred to a court where venue would be proper.' Ex parte Overstreet, 748 So.2d 194, 196 (Ala.1999). `A petition for a writ of mandamus is the appropriate means for challenging a trial court's refusal to transfer an action and such a petition is due to be granted if the petitioner makes a clear showing of error on the part of the trial court.' Ex parte Alabama Power Co., 640 So.2d 921, 922 (Ala.1994). `In considering a mandamus petition, we must look at only those facts before the trial court.' Ex parte American Res. Ins. Co., 663 So.2d 932, 936 (Ala.1995)."
879 So.2d at 548-49.

C. Analysis
This Court recently reviewed the status of venue of actions in the Bessemer Division of the Jefferson Circuit Court in Walter Industries. We there reiterated the rule expressed in Ex parte Central of Georgia Railway, 243 Ala. 508, 10 So.2d 746 (1942),[6] that the jurisdiction granted to the Bessemer Division is limited to those cases arising in that division.
The plaintiffs did not dispute that their claims did not arise within the Bessemer Division. Instead, they ask that we overrule Walter Industries, contending that this Court failed to consider § 6-3-7(d) and that Walter Industries is in "clear and irreconcilable conflict" with § 6-3-7(d). After quoting the statute and highlighting portions of it, the plaintiffs make the following argument, which is their entire argument:
"Therefore, this court should take this opportunity to readdress its majority opinion in Walters Industries by directly considering § 6-3-7(d) and, in doing so, conclude that Alabama's venue statutes §§ 6-3-2(a)(3) and 6-3-7(a)(3), rather than the Bessemer Act, control the issue of venue in these cases. Unquestionably, when § 6-3-7(d) is applied to the facts of these cases, venue of these actions is properly laid in the Bessemer Division."
Respondents' brief, p. 16.
We agree with Dollar that the foregoing argument fails to develop sufficiently the basis for the plaintiffs' contention. See Rule 28(b)(10), Ala. R.App. P. We therefore decline to revisit Walter Industries.
The trial court erred when it denied the motions to transfer venue to the Birmingham Division of the Jefferson Circuit Court in cases no. 1030573, 1030574, 1030575, 1030576, 1030577, and 1030579.

V. Conclusion
For the reasons previously stated, we deny that aspect of the petitions in cases *939 no. 1030573, 1030574, and 1030575 seeking the dismissal of the Kelley, Griffin, and Hannon/Allen actions so as to permit refiling in Turner County, Georgia, but we grant that aspect of those petitions seeking transfer of those actions to the Birmingham Division of the Jefferson Circuit Court. We grant the petitions in cases no. 1030576, 1030577, and 1030579 seeking transfer of the Kelley, Griffin, and Hannon/Allen actions to the Birmingham Division of the Jefferson Circuit Court. We deny the petition in case no. 1030589 seeking dismissal of the Spates action so as to permit refiling in Turner County, Georgia.
1030573PETITION GRANTED IN PART AND DENIED IN PART; WRIT ISSUED.
1030574PETITION GRANTED IN PART AND DENIED IN PART; WRIT ISSUED.
1030575PETITION GRANTED IN PART AND DENIED IN PART; WRIT ISSUED.
NABERS, C.J., and HOUSTON, BROWN, JOHNSTONE, HARWOOD, WOODALL, and STUART, JJ., concur.
SEE, J., concurs in the rationale in part and concurs in the judgments.
1030576PETITION GRANTED; WRIT ISSUED.
1030577PETITION GRANTED; WRIT ISSUED.
1030579PETITION GRANTED; WRIT ISSUED.
NABERS, C.J., and HOUSTON, SEE, BROWN, JOHNSTONE, HARWOOD, WOODALL, and STUART, JJ., concur.
1030589PETITION DENIED.
NABERS, C.J., and HOUSTON, BROWN, JOHNSTONE, HARWOOD, WOODALL, and STUART, JJ., concur.
SEE, J., concurs in the judgment.
SEE, Justice (concurring in the rationale in part and concurring in the judgments).
I concur fully in Part IV of the main opinion, which grants DCC's and Dollar's petitions for the writ of mandamus in the cases no. 1030573, 1030574, 1030575, 1030576, 1030577, and 1030579 insofar as they seek the transfer of those cases to the Birmingham Division of the Jefferson Circuit Court.
I concur in the result reached in Part III of the main opinion denying the petitions for the writ of mandamus in cases no. 1030573, 1030574, 1030575, and 1030589 insofar as they seek dismissal of those cases to permit their refiling in Georgia based upon the doctrine of forum non conveniens, pursuant to Ala.Code 1975, § 6-5-430. I agree with the main opinion that the petitions for the writ of mandamus should be denied as to this issue; however, I believe that the petitions should be denied because DCC has not met its burden of showing that the claims against it arose outside of Alabama, as is required by § 6-5-430, Ala.Code 1975.[7] See my dissent in *940 Ex parte Kia Motors America, Inc., 881 So.2d 396 (Ala.2003) (See, J., dissenting).
NOTES
[*] Note from the reporter of decisions: This opinion was released by the Supreme Court under the date September 17, 2004. This case was actually released to the public on September 20, 2004.
[1] Although three of the underlying complaints identify this decedent as "Roderick Kelley," the fourth complaint identifies him as "Roderick Antonio Kelly." This opinion uses the name "Roderick Kelley."
[2] We note that one of the complaints refers to King as "Roy F. King, Jr."
[3] We note that DaimlerChrysler Corporation is the only one of the four DCC defendants that has petitioned this Court for writs of mandamus in these cases. However, as the petitioners have done, the respondents treat the four DCC defendants as one entity; therefore, we also treat the four DCC defendants as one entity referred to in the petitions and responses as "DaimlerChrysler Corporation" or "DCC."
[4] Dollar has not filed any motions in any of the various proceedings seeking dismissal based upon the doctrine of forum non conveniens; consequently, it seeks no relief in this Court on that ground.
[5] Section 6-5-430 operates upon the premise that although jurisdiction is permissible within the State, a more appropriate forum exists outside the State. Compare § 6-3-21.1, entitled "Change or transfer of venue for convenience of parties and witnesses or in interest of justice," requiring good initial venue before a transfer to another court within the State may be ordered. See Ex parte Southern Ry., 556 So.2d 1082, 1086 (Ala.1989) ("This act [codified at § 6-3-21.1] contemplates proper venue in more than one Alabama county. It contemplates transfer of venue from a county in Alabama where venue is proper to another county within the state where venue is also proper, but more convenient for the parties and witnesses. Both statutes proceed from the premise that the courts in which the plaintiff elects to bring suit have jurisdiction of the subject matter and have personal jurisdiction over the defendant."). It is therefore not necessary to resolve first the question whether venue is proper in the context of a motion for a change of venue pursuant to § 6-5-430 so long as jurisdiction exists. No defendant has challenged jurisdiction.
[6] In Walter Industries, a plea for reconsideration of the holding of this Court in Ex parte Central of Georgia Ry. failed to gain the support of a majority of this Court. See Walter Industries, 879 So.2d at 555 (Lyons, J., dissenting). The plaintiffs make no such contention in this proceeding.
[7] Section 6-5-430, Ala.Code 1975, the forum non conveniens statute, provides, in pertinent part:

"Whenever ... a claim, either upon contract or in tort[,] has arisen outside this state against any person or corporation ... and ... upon motion of any defendant, it is shown that there exists a more appropriate forum outside this state, ... the court must dismiss the action without prejudice...."
The main opinion concludes that the statute applies because "DCC points to the accrual of the plaintiffs' tort claims in Georgia." (Emphasis added.) However,
"the words `arisen' and `accrue' are not synonymous. `Arisen' is used to describe the location of a cause of action, whereas `accrue' is used to describe the initial point in time when a cause of action may be asserted."
Kia Motors America, Inc., 881 So.2d 396, 402 (Ala.2003) (See, J., dissenting).